**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MT. HAWLEY INSURANCE COMPANY,

    Plaintiff,

v.               CIVIL NO.  5:18-cv-01140

HUSER CONSTRUCTION COMPANY, INC.,

      Defendant.    /
_____

## COMPLAINT FOR DECLARATORY RELIEF

   Plaintiff, MT. HAWLEY INSURANCE COMPANY ("Mt. Hawley"), files this Complaint for Declaratory Relief against Defendant, HUSER CONSTRUCTION COMPANY, INC. ("Defendant" or "Huser"), and alleges:

### I.

### PARTIES

   1.  Plaintiff Mt. Hawley Insurance Company is an Illinois domiciled insurance company organized and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois and is, therefore, a citizen of Illinois, as defined by 28 U.S.C. §1332.

   2.  Defendant Huser Construction Company, Inc. is a Texas corporation with its principal place of business in Texas and can be served through its Registered Agent, Stephen T. Huser, 410 Cotton Gin Lane, Kerrville, Texas 78028.

### II.

### JURISDICTION AND VENUE ALLEGATIONS

   3.  This is an action for declaratory relief pursuant to pursuant to Fed. R. Civ. P. 57

and 28 U.S.C. § 2201.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the underlying lawsuit that is the subject of this coverage action is pending within this judicial district.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.   There exists complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs as set forth below.

6.     Declaratory relief is proper regarding the subject matter of this action because there is an actual controversy between the parties concerning whether Mt. Hawley has a duty to defend and indemnify Defendant against the allegations in the pending underlying lawsuit, and by the terms and provisions of Title 28 U.S.C. § 2201, this Court has the power to declare the obligations and duties of the parties and to give such other relief as may be necessary.

## III.

## GENERAL ALLEGATIONS

**A.     The Underlying Lawsuit**

7.     A Joint Venture limited liability company in which Huser Construction Company, Inc. was a member, and the City of Jourdanton ("City"), as owner, entered into a Standard Form of Agreement Between Owner and Design-Builder dated July 20, 2015 (the "Contract") for the design and construction of a municipal sports complex including   baseball and softball fields and public pool (the "Project").

8.     As a result of the Joint Venture's alleged failure "to design and/or construct the Project in accordance with the Contract Documents resulting in substantial defects to the Project," the City filed a lawsuit in the 81st Judicial District Court of Atascosa County, Texas, pending as Case No. 17-12-1181-CVA (the "Underlying Lawsuit").   A copy of the live pleading in the Underlying Lawsuit, *Plaintiff's Third Amended Petition*, is attached hereto as Exhibit 1.   This

pleading, for the first time, adds Huser Construction Company, Inc. as a defendant.

9.     *Plaintiff's Third Amended Petition* includes the following allegations:

3.1   The City of Jourdanton, as owner, and the Joint Venture, as Design-Builder entered into that certain Standard Form of Agreement Between Owner and Design-Builder dated July 20, 2015 (the ""Contract"), in which the Joint Venture was engaged to design and construct a municipal sports complex (the "Project"). The Project required the design and construction of two (2) Little league baseball fields, one (1) Senior Little League baseball field and two (2) Softball fields with a concession building, and a new public swimming pool.   The Project also included site work, streets, parking, utilities, fencing and appurtenances for the sports complex.

3.2   The Joint Venture was specifically constituted in order that the Joint Venture could qualify for a performance bond for the Project and complete the design-build project as specified in the Contract.   The Members of the Joint Venture each executed an LLC company agreement (the "Joint Venture Agreement") that specified the scope of work each member was to perform on the Project, as well as each member's percentage ownership interest in the Joint Venture.

3.3   The Contract made the Joint Venture Agreement a "Contract Document" that was incorporated into the Contract.   Further, the Contract expressly granted the City third-party beneficiary status as to all subcontracts entered into by the Joint Venture for work on the Project.

3.4   The Joint Venture Agreement appointed [Huser Construction Company, Inc.] as the "Manager of Operations" for the Joint Venture.   On behalf of the Joint Venture, Huser was tasked with, among other things:   managing onsite construction activities during the Project; providing onsite quality control/quality assurance during the Project; coordinating completion of all outstanding work on the Project; and executing subcontracts with the other Joint Venture members.

3.6   The Joint Venture failed to design and/or construct the Project in accordance with the Contract Documents resulting in substantial defects to the Project, including, but not limited to:  substantial cracks in the swimming pool, parking lot, drives and other paved surfaces; failure of improvements to meet TAS and/or ADA requirements; and deficient site drainage.   Each of these areas of deficiencies has resulted in property damage to the work and the adjacent portions of the Project.   The City has been damaged and will continue to be damaged as a result of the failure of the Joint Venture, its members, and its subcontractors of multiple tiers to perform the Work in accordance with the contract and the controlling standards of care as required by law.

3.8   Additionally, because Huser had quality assurance and quality control obligation to the other Joint Venture members and the City, Huser breached its

obligations to the Joint Venture and the City by failing to ensure that Huser's subcontractor performed its Work in accordance with the Contract Documents. In addition to the liability Huser has to the Joint Venture and the city, the Joint Venture remains liable to the City for all failures of performance by the Joint Venture under the Contract and under the Joint Venture Agreement, specifically Article XII therein. Under the Contract, the Joint Venture is directly liable to the city for substandard and nonconforming work performed by one of its member's sub-contractors.

3.9   The reconstruction and repair work necessary to bring the Project into strict compliance with the Contract Documents and industry standards; eliminate the distress in the swimming pool, parking lot, drives and other paved surfaces; remedy the TAS and/or ADA violations; and correct the deficient site drainage will cause extensive damage to the remainder of the facility, and other property, resulting in the City's continued loss of use and enjoyment of the Project.

3.10   The Contract requires the Joint Venture (including its individual members) to correct all defective work.  Despite notice and demand, the Joint Venture and Huser have not corrected the non-conforming work.

3.11   The City notified the Surety of the Joint Venture's default under the Contract.   Despite being given notice of the Joint Ventures' default, the Surety has not commenced or completed performance of the Joint Venture's obligations under the Contract.

## B. <u>Breach of Contract Against The Joint Venture and Huser</u>

4.2   The City and the Joint Venture entered into a valid and enforceable contract.  The City has complied with all of its obligations under the Contract. The Joint Venture materially breached the Contract by, among other things, failing to construct the Project in accordance with the Contract and Contract Documents, and refusing to correct its nonconforming and defective work.

4.3   Huser materially breached the Contract by failing to timely remedy Cody Pools' construction defects.   Additionally, Huser failed to properly perform its contractual obligations to the Joint Venture and the City by contracting with sub-contractors and then failing to ensure those subcontractors complied with the Contract Documents for that portion of the work performed by those sub-contractors at the drive, parking, and grassed areas of the site in and around the playing fields, and the pool construction.   Huser's defective performance of its scope of work is a breach of the contractual and warranty obligation owed by Huser, individually and as a member of the Joint Venture, to the City.

4.4   As a direct and proximate result of the Joint Venture and Huser's breaches, the City has been damaged.

(underline emphasis added)

4

10.    *Plaintiff's Third Amended Petition* alleges more than $1 million in damages not to exceed $3,500,000.

**C.    The Mt. Hawley Policies**

11.    Plaintiff, Mt. Hawley, issued Commercial General Liability Policies spanning potentially relevant policy periods 12/31/2014 through 01/01/2019 to Defendant Huser Construction Company, Inc.   The policy numbers and related policy periods are as follows:

MGL0174186        12/31/2014 to 01/01/2016
MGL0174312        01/01/2016 to 01/01/2017
MGL0174425        01/01/2017 to 01/01/2018
MGL0174527        01/01/2018 to 01/01/2019

(the "Mt. Hawley Policies").   The Mt. Hawley Policies are attached hereto as Exhibits 2-5.

12.    Mt. Hawley also issued Commercial Excess Liability Policies to Defendant Huser Construction Company, Inc. for the same time period.   The excess policy numbers and related policy periods are as follows:

MXL0372317        12/31/2014 to 01/01/2016
MXL0372514        01/01/2016 to 01/01/2017
MXL0372685        01/01/2017 to 01/01/2018
MXL0372827        01/01/2018 to 01/01/2019

(the "Mt. Hawley Excess Policies").   The Mt. Hawley Excess Policies are attached hereto as Exhibits 6-9.

13.    The terms of each of the Mt. Hawley Policies are the same or substantially similar. The insuring agreement of the Mt. Hawley Policies provides as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.        Insuring Agreement**

**a.**        We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; ….

14. The Underlying Lawsuit and allegations in *Plaintiff's Third Amended Petition* arise out of alleged breach of the Contract and thus, are subject to the following Breach of Contract Exclusion found in the Mt. Hawley Policies:

## BREACH OF CONTRACT EXCLUSION

This insurance policy does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:

a. Breach of express or implied contract;

b. Breach of express or implied warranty;

c. Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

d. Libel, slander or defamation arising out of or within the contractual relationship.

15. Each of the Mt. Hawley Excess Policies have nearly identical Breach of Contract Exclusions.

**D.     Tender and Denial**

16. Defendant tendered the Underlying Lawsuit and *Plaintiff's Third Amended Petition* to Mt. Hawley for a defense and indemnity.

17. The Underlying Lawsuit and *Plaintiff's Third Amended Petition* allege damages arising directly or indirectly from Defendant's breach of the Contract, which is expressly excluded by the Mt. Hawley Breach of Contract Exclusions.   Accordingly, there is no coverage for the

Underlying Lawsuit and Mt. Hawley denied coverage as set forth in the correspondence attached hereto as Exhibit 10.

18.     There are numerous additional provisions in the Mt. Hawley Policies and Mt. Hawley Excess Policies that may also apply as set forth in Exhibit 10, which is incorporated herein by reference, but the Breach of Contract Exclusions independently and conclusively exclude coverage for the Underlying Lawsuit.[1]

**IV.**

**CLAIM FOR RELIEF - DECLARATORY JUDGMENT**

19.     Mt. Hawley re-alleges and incorporates by reference the allegations above.

20.     By virtue of the foregoing, there exists an actual, justiciable controversy between the parties.

21.     Mt. Hawley seeks a declaration that the Breach of Contract Exclusions set forth in the Mt. Hawley Policies and Mt. Hawley Excess Policies apply to preclude coverage for the Underlying Lawsuit and thus, Mt. Hawley does not owe Huser a duty to defend or indemnify.

22.     Because the Underlying Lawsuit "arises out of" an alleged breach of contract, the Breach of Contract Exclusion applies and there is no coverage.   *See Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003) (a breach-of-contract exclusion preventing coverage for injuries "arising out of" particular conduct "need only bear an incidental relationship to the described conduct for the exclusion to apply."); *HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*, 2009 WL 2600431 (S.D. Fla. Aug. 21, 2009) (applying Mt. Hawley's Breach-of-Contract Exclusion to condo unit owner claims against seller/developer as claims "arise out of" condominium sales contract); *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.,* 2011 WL 9169946 (S.D.

---

[1] Mt. Hawley is not waiving any right to assert additional policy defenses based upon such provisions and further development of the facts.

Tex. June 15, 2011), affirmed, 2012 WL 4052642 (5th Cir. Sept. 14, 2012) (applying Mt. Hawley's Breach-of-Contract Exclusion to construction defect claims, including negligence).

23.     In addition to the Breach of Contract Exclusion, the Mt. Hawley policy provisions discussed in Exhibit 10, and fully incorporated herein, would also apply to preclude coverage for the Underlying Lawsuit.

**V.**

**JURY DEMAND**

24.     Plaintiff requests that this civil action be tried before a jury.

**VI.**

**PRAYER**

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment against Defendant as follows:

1. A declaration that the Mt. Hawley Policies and Mt. Hawley Excess Policies do not provide coverage for the Underlying Lawsuit and Mt. Hawley does not owe Huser a duty to defend or indemnify; and

2. Such other and further relief as to which Plaintiff is justly entitled.

Dated: October 30, 2018.

Respectfully submitted,

   */s/ Greg K. Winslett*
GREG K. WINSLETT, Trial Attorney
State Bar No. 21781900
RICHARD L. SMITH, JR.
State Bar No. 18671200
**QUILLING, SELANDER, LOWNDS,**
**WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
gwinslett@QSLWM.com
rsmith@QSLWM.com

**ATTORNEYS FOR PLAINTIFF**
**RLI INSURANCE COMPANY**